Includes Color Pictures

Print in Color

### CA No. 08-55795

## *IN THE UNITED STATES COURT OF APPEALS*
### *for the*
### *NINTH CIRCUIT*

NOVELTY, INC.,
NOVELTY WHOLESALE, INC.,
NOVELTY TRANSPORTATION, INC.,
and
EXXONMOBIL OIL CORPORATION,
*Appellants / Defendants*
**v.**

LANARD TOYS LIMITED,
and
LANARD TOYS, INC.
*Appellees / Plaintiff*

## PETITION FOR REHEARING AND/OR REHEARING EN BANC

### ON APPEAL FROM THE CENTRAL DISTRICT OF CALIFORNIA

Gregg A. Rapoport
Business Legal Partners Law Corp.
135 W. Green Street, Suite 100
Pasadena, CA 91105
Tel. 626-585-0155
Fax 626-578-1827

Julia A. Follansbee
Follansbee & Associates
61510 Cougar Trail
Bend, OR 97701
Tel. 541-318-5991
Fax 541-318-5981

Paul B. Overhauser
Overhauser & Lindman, LLC
740 W. Green Meadows Dr., Ste. 300
Greenfield, IN 46140
Tel. 317-891-1500
Fax 866-283-8549

**Attorneys for Appellants / Defendants**

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the full names of the parties the undersigned represents are Novelty, Inc., Novelty Wholesale, Inc. Novelty Transportation, Inc. and ExxonMobil Oil Corporation. There is no parent corporation of Novelty, Inc., Novelty Wholesale, Inc. Novelty Transportation, Inc., nor is there any publicly held corporation that holds 10% or more of any of these parties' stock.

ExxonMobil Oil Corporation is wholly owned by Exxon Mobil Corporation, which is publicly traded.

Dated: April 27, 2010

Respectfully submitted,



_____

**OVERHAUSER & LINDMAN, LLC**
Paul B. Overhauser
740 West Green Meadows Drive
Suite 300
Greenfield, IN 46140

## **TABLE OF CONTENTS**

Introduction  ……………………………………………………………1

Statement of Counsel  …………………………………………………2

Reasons for Petition  …………………………………………………...3

The Relevant Law and its Application to this Case  ...........................................4

The Majority's Other Cases Are Distinguishable  ………………………………12

The Panel Overlooked Material Points of Fact and Law  ……………………… 16

Conclusion  ………………………………………………………… 20

Certification of Compliance  …………………………………………….. 21

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>:                                                                                     <u>PAGE</u>

*Bonazili v. R.S.V.P. Int'l, Inc.,*
    353 F.Supp.2d 218 (D.R.I. 2005)……………………………………………..7

*Boyds Collection, Ltd. v. Bearing Collection,*
    365 F.Supp.2d 612 (M.D. Penn. 2005)…..……………………………… ...15

*Cavalier v. Random House,*
    297 F.3d 815 (9th Cir. 2002)…………………………………………………..4

*City Solutions v. Clear Channel Communications, Inc.,*
    365 F.3d 835 (9th Cir. 2004) ……………………………………………...18

*Durham Indus., Inc. v. Tomy Corp.,*
    630 F.2d 905 (2d Cir. 1980) ………………………………...1, 2, 7, 20

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,*
    122 F.3d 1211 (9th Cir. 1997)……………………………………...3, 6, 9, 16

*Ets-Hokin v. Skyy Spirits, Inc.,*
    225 F.3d 1068 (9th Cir. 2000) …………………………………….2-3, 16

*Fabrica Inc. v. El Dorado Corp.,*
    697 F.2d 890 (9th Cir. 1983)……………………………………... 3, 6, 7

*Feist Publications, Inc. v. Rural Telephone Service Co.,*
    499 U.S. 340 (1991)…………………………………………………...16

*Galiano v. Harrah's Operating Co., Inc.,*
    416 F.3d 411 (5th Cir. 2005)………………………………………….6, 7

*Gay Toys, Inc. v. Buddy L Corp.,*
    703 F.2d 970 (6th Cir. 1983)……………………………………10, 11, 15

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,*
    780 F.2d 189 (2d Cir. 1985)……………………………………………..12

*Josephs v. Pacific Bell,*
    443 F.3d 1050 (9th Cir. 2006)…………………………………………….4

*Kamar Int'l, Inc. v. Russ Berrie & Co.,*
    657 F.2d 1059 (9th Cir. 1981)…………………………………………….6

*Masquerade Novelty, Inc. v. Unique Indus., Inc.,*
    912 F.2d 663 (3d Cir. 1990)……………………………………… 5, 14

*Mazer v. Stein,*
    347 U.S. 201 (1954)……………………………………………………2, 7

*Norris Indus., Inc. v. International Tel. & Tel. Corp.,*
    696 F.2d 918 (11th Cir. 1983)…………………………………………….6

*North Coast Indus. v. Jason Maxwell, Inc.,*
    972 F.2d 1031 (9th Cir. 1992)…………………………………………….6

*Pivot Point Int'l, Inc. v. Charlene Products, Inc.,*
    372 F.3d 913 (7th Cir. 2004)……………………………………………..6

*Poe v. Missing Persons,*
    745 F.2d 1238 (1984)……………………………………3, 6, 8, 18, 19

*Ruston v. Vitale,*
    218 F.2d 434 (2d Cir. 1955)……………………………………………15

*Spinmaster, Ltd. v. Overbreak LLC,*
    404 F. Supp.2d 1097 (E.D. Ill. 2005)………………………… .13, 14, 16

*Traffix Devices, Inc. v. Marketing Displays, Inc.,*
    532 U.S. 12 (2001)……………………………………………………9

## **STATUTES:**

1976 Copyright Act, 17 U.S.C. §§ 101-1110 …………………………………5-6

17 U.S.C. § 101 …………………………………………………………*passim*

17 U.S.C. § 410(c) …………………………………………………………16

## **TREATISES:**

PAUL GOLDSTEIN, 1 COPYRIGHT (2d ed. 2004) …………………………………..5

M. Nimmer, *The Subject Matter of Copyright Under the Act of 1976,*
        24 U.C.L.A. L.Rev. 978 (1977) ……………………………………………11

## Introduction

A "handle" is "a part of a thing made specifically to be grasped or held by the hand." *Random House Dictionary of the English Language* at 642 (Unabridged Edition 1966). In its memorandum disposition, the majority has extended copyright protection to a consummately utilitarian handle, *simply because it is part of a toy.* Aided by "common sense"[1] and copyright law, Judge Clifton dissented.

This Court is asked to reconsider whether the following handle is copyrightable:



| Plaintiff's "PROP SHOTS" Toy 3ER523-524 | Is this Handle an Uncopyrightable Useful Article? | Novelty's Accused "Pull-N-Launch Plane Set" 3ER508 |
|---|---|---|

Novelty/Exxon request panel reconsideration and/or en banc review, in order to "consult[] the cases" and "check both…eyes and…sense." *Durham Indus., Inc.*

---

[1] '[G]ood eyes and common sense may be as useful as deep study...of [copyright] cases[.]" *Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 917 (2d Cir. 1980).

*v. Tomy Corp.,* 630 F.2d 905, 917 (2d Cir. 1980). At issue is whether Lanard's *handle* on its 'Wild Copter' and 'Stunt Plane' toys, or its 'Drop Copter' toy, are copyrightable.

## Statement of Counsel

Pursuant to FRAP 35 and 40, Novelty, Inc., Novelty Wholesale, Inc., Novelty Transportation, Inc., and ExxonMobil Oil Corporation ("Novelty/Exxon") respectfully petition for rehearing and/or rehearing en banc. This case raises the serious question of how much creative content a "useful article" must embody to qualify as a "pictorial, graphic, and sculptural works," and thus qualify for copyright protection.

Rehearing and rehearing en banc are justified because the majority's decision:

1) does not follow 17 U.S.C. § 101's mandate that utilitarian aspects of pictorial, graphic, and sculptural works and/or "useful articles" cannot be copyrighted. Such a conflict affects a rule of national application in which there is an overriding need for uniformity and, as such, is of exceptional importance. FRAP 35(a)(2).

2) conflicts with the Supreme Court's decision pursuant to 17 U.S.C. § 101 in *Mazer v. Stein,* 347 U.S. 201 (1954), and with this Court's decisions in *Ets-Hokin v. Skyy Spirits*, *Inc.,* 225 F.3d 1068 (9th Cir. 2000); *Entertainment Research*

*Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211 (9th Cir. 1997); *Poe v. Missing Persons,* 745 F.2d 1238 (1984); and *Fabrica Inc. v. El Dorado Corp.,* 697 F.2d 890 (9th Cir. 1983). FRAP 35(a)(1); FRAP 35(b)(1)(A). En banc review is therefore necessary to secure and maintain uniformity of this Court's decisions. FRAP 35(b)(1)(A).

3)    conflicts with authoritative decisions of other Circuits that have addressed the application of the same statute. FRAP 35(b)(1)(B).

4)  overlooked material points of fact and law. FRAP 40(a)(2).

## Reasons for Petition

Novelty/Exxon petitions with respect to two issues:  (1) whether Lanard's PROP SHOTS handle and 'Drop Copter' toy can be the subject of valid copyrights when they are exclusively utilitarian items; and (2) whether, following the verdict, Novelty/Exxon's Rule 50(b) motion should have been granted because no jury, faithfully applying 17 U.S.C. § 101's legal standards, could reasonably conclude that Lanard's PROP SHOTS handle and 'Drop Copter' toy were other than utilitarian or "useful articles." To be clear, Novelty/Exxon argue that the following are not subject to copyright protection as "sculptural works:"

| | |
|---|---|
|  | Handle of PROP SHOTS toy, included in copyright deposit for VA 656-310. 3ER523-534. |
| | PROP SHOTS DROP COPTER toy, Registration No. VA 1-324-991. 3SER529-530. |

Whether the copyright laws protect a work is a mixed question of fact and law reviewed de novo. *Cavalier v. Random House,* 297 F.3d 815, 822 (9th Cir. 2002). This Court reviews de novo the denial of a Rule 50(b) motion. *Josephs v. Pacific Bell,* 443 F.3d 1050, 1062 (9th Cir. 2006).

## The Relevant Law and its Application to this Case

The majority held that substantial evidence supports the verdict that the items in question, because they are "toys," qualify for copyright protection "in whole or in part" as "pictorial, graphic and sculptural works." MemDispo6-10.

While 17 U.S.C. § 101 extends copyright to pictorial, graphic, and sculptural works, it includes a critical limitation:

> "Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans. *Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a* **useful article***, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.*

(Emphasis added.)   A "'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information.  An article that is normally a part of a useful article is considered a 'useful article'".  17 U.S.C. § 101.

Federal courts applying the definitions of "pictorial, graphic, and sculptural works" and "useful articles" have been quite careful, because this application presents significant difficulties.  Courts "have twisted themselves into knots trying to create a test to effectively ascertain whether the artistic aspects of a useful article can be identified separately from and exist independently of the article's utilitarian function."  *Masquerade Novelty, Inc. v. Unique Indus., Inc.,* 912 F.2d 663, 670 (3d Cir. 1990).  "Of the many fine lines that run through the Copyright Act, none is more troublesome than the line between protectible pictorial, graphic and sculptural works and unprotectible utilitarian elements of industrial design."  PAUL GOLDSTEIN, 1 COPYRIGHT § 2.5.3, at 2:56 (2d ed. 2004).

5

Consequently, with respect to the 1976 Copyright Act, 17 U.S.C. §§ 101-1110, the Circuits have proposed various tests and standards to confine copyright to only those artistic aspects of a given work that exist apart from its utilitarian value and can be "separated" without reducing the item's usefulness.  *See, e.g., Galiano v. Harrah's Operating Co., Inc.,*  416 F.3d 411, 417 & n.13 (5th Cir. 2005)(listing variations of judicially-developed tests); *Pivot Point Int'l, Inc. v. Charlene Products,* 372 F.3d 913, 920-31 (7th Cir. 2004)("conceptual separability" exists when artistic aspects can be conceptualized independently of function, requiring solely artistic judgment); *Entertainment Research,* 122 F.3d at 1220 (in derivative copyright action, "numerous decisions of this Circuit…establish that the original aspects of a work must be 'more than trivial' to warrant copyright protection"); *North Coast Indus. v. Jason Maxwell, Inc.,* 972 F.2d 1031, 1033 (9th Cir. 1992)("[o]riginality is the indispensable prerequisite for copyrightability"); *Poe v. Missing Persons,*  745 F.2d 1238, 1242 (9th Cir. 1984)(summary judgment reversed; no evidence established as a matter of law that article was utilitarian); *Norris Indus. v. International Tel. & Tel. Corp.,* 696 F.2d 918, 923 (11th Cir. 1983)("separability" encompasses physical and/or conceptual ability to remove the artistic component from the useful article); *Fabrica Inc. v. El Dorado Corp.,* 697 F.2d 890, 893 (9th Cir. 1983)("if an article has *any* intrinsic utilitarian function, it can be denied copyright protection except to the extent that its artistic features can

be identified separately and are capable of existing independently as a work of art"); *Kamar Int'l, Inc. v. Russ Berrie & Co.,* 657 F.2d 1059, 1061 (9th Cir. 1981)("Originality is the sine qua non of copyrightability").

The usual difficulty in applying section 101's relevant definitions *did not exist here*. Judge Clifton observed: "[i]t is difficult to identify any sculptural features of the handles beyond their basic shape and grooves, and *Lanard makes no attempt to do so.*" Dissent6 (emphasis added). "One look at [Lanard's launcher handles and 'Drop Copter'] reveals that, in each, the element of originality that is necessary to support a valid copyright is totally lacking." *Durham,* 630 F.2d at 908-09. Lanard does not elaborate exactly what comprises the "artistic components" of the launcher handles, (including any part of them) or the 'Drop Copter.' This evidentiary dearth contrasts sharply with every other decision involving "pictorial, graphic and sculptural works" where the claimed artistic component is described in detail. *See, e.g., Mazer,* 347 U.S. at 202 (statuettes of dancing male and female figurines); *Galiano,* 416 F.3d at 415 & n.6 (listing numerous claimed artistic attributes of Harrah's uniforms, such as "star buttons" and "asymmetric closures"); *Fabrica,* 697 F.2d at 892 (display folder with faux suede cover, saddle stitching, and brass tips on corners with a unique fold-out sample display is claimed as "artistic"); *Bonazili v. R.S.V.P. Int'l, Inc.,* 353 F.Supp.2d 218, 225 (D.R.I. 2005)(handles "made to look like feathers at the end

of an arrow" attached to "heart-shaped" measuring cups claimed as artistic elements separable from utilitarian function).

The evidentiary standard for establishing what is a "pictorial, graphic, and sculptural work" as opposed to a "useful article" was discussed in *Poe v. Missing Persons,* 745 F.2d 1238 (9th Cir. 1984). Judge Alarcon said: "[a]ppellees presented no evidence in support of their contention that Poe's article was a 'swimsuit' or an article or clothing." 745 F.2d at 1239. Thus, there was insufficient evidence to determine as a matter of law that "Aquatint No. 5," which resembles a bikini, was a "useful article." *See id.* at 1244 (exhibit). The fact that the "bikini" was worn "on one occasion…so that a photograph of Poe's visual art work would be a part of the photographer's portfolio," *id.* at 1241, was insufficient as "[n]o evidence was presented to support the…finding that the article which adorned the model could be used as a swimsuit." *Id.* at 1241-42. This case is identical: no evidence was presented regarding *any* "artistic" aspect of the handles, just as there was no evidence the "bikini" was a "useful article." What Lanard proposed instead was that the handle "could be designed a million ways," 1SER130line7, implying that merely "copying" the handle was evidence of infringement. But, copyright does not protect useful articles: "there is no prohibition against copying goods and products. In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to

8

copying." *Traffix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 12, 29 (2001).

As Judge Snyder observed below, the 'Wild Copter' and 'Stunt Plane' handles "bear no resemblance to actual helicopters or airplanes." 1ER82lines9-11. Therefore, these toy handles fit the definition of "useful articles" because they do *not* "merely …portray the appearance of the [real] article." 17 U.S.C. § 101. She further observed:

> [T]here appear to be no 'pictorial, graphic or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects' of the 'Drop Copter' toy, 'Wild Copters' launcher, and 'Stunt Plane' launcher apart from the graphics decorating the toys, which plaintiffs apparently do not contend to be substantially similar to the graphics on defendants' toys. Each feature of plaintiffs' 'Drop Copter,' 'Wild Copters' launcher, and 'Stunt Plane' launcher arguably has a utilitarian purpose. *See Entertainment Research,* 122 F.3d 1211 (9th Cir. 1997)("Any aspects of [plaintiff's] costumes that are purely functional, utilitarian or mechanical, will not be given any copyright protection."). Each feature of the 'Drop Copter' appears to function to allow its use as a sling-shot type device to launch the toy into the air. The handles with 'indented channels' on the 'Stunt Plane' and 'Wild Copters' launchers function to allow a child to grip the device. The 'launch pads' of the 'Wild Copters' launcher and 'Stunt Plane' launcher appear to perform the utilitarian function of securing the toy airplanes for launch.

1ER82-83lines25-28&1-11 (footnote omitted). Nevertheless, Judge Snyder concluded--despite her cogent observations--that a genuine issue of material fact "exists as to whether the 'Drop Copter,' Wild Copters' launcher, and 'Stunt Plane'

launcher perform intrinsic utilitarian functions, and therefore are useful articles." 1ER83lines12-17.

Judge Snyder's conclusion no doubt derived from the Sixth Circuit's holding[2] that toys are copyrightable because "toys do not even have *an* intrinsic function other than the portrayal other than the real item." *Gay Toys, Inc. v. Buddy L Corp.,* 703 F.2d 970, 974 (6th Cir. 1983)(*cited at* 1ER81-82lines25-28&1-7). This dicta implies that toys *qua* toys are *always* copyrightable. But the toy in *Gay Toys*--a replica of a real airplane--is readily distinguishable from the toys at issue here. Moreover, to say that "toys *qua* toys are *always* copyrightable" ignores the statutory requirements for copyright, and is just as suspect as saying "toys *qua* toys are 'useful articles' and not copyrightable." *Cf. id.* at 973 (finding that toys are utilitarian). The test to determine whether a toy is copyrightable should not differ from the test *for any other article* under 17 U.S.C. § 101.

The toy at issue in *Gay Toys*, the "Air Coupe," was held copyrightable because it was an imitation of the real thing: "a toy airplane is merely a model which portrays a real airplane." *Id.* Thus, this toy fell outside the definition of a useful article because its function clearly was "*merely to portray the appearance of the article.*" 17 U.S.C. § 101. Here, the toy launcher handles *do not* "portray the

---

[2] Judge Snyder refers to Lanard's argument, relying upon *Gay Toys,* that toys have no intrinsic utilitarian function. 1ER81-82lines25-28&1-7.

appearance of the article." Thus, the designer of Lanard's handle, unconstrained by the requirement of making a faithful reproduction, could have added artistic elements to the handles, such as engravings or pictures. However, that designer failed to do so; there is nothing "artistic" about Lanard's handle:

 3ER523-534

Likewise, the 'Drop Copter' doesn't resemble anything real: this toy requires reading the packaging to see determine its function. 5ER1059 (photo). Why the 'Drop Copter' is "purely functional" cannot be explained better than Judge Clifton did. Dissent4, n.2&6. Moreover, the Sixth Circuit recognizes that "the 1976 Act disallows copyright protection to articles which have *an* intrinsic utilitarian function" as opposed to the 1909 Copyright Act, which "disallowed copyright protection to articles whose *sole* intrinsic function was utility." *Gay Toys,* 703 F.2d at 973-74 (*citing* M. Nimmer, *The Subject Matter of Copyright Under the Act of 1976,* 24 U.C.L.A. L.Rev. 978, 1001-1003 (1977)). Under either Act, copyright protection does not extend to the 'Drop Copter.'

As for the launcher handles, the definition specifies that a "useful article" is an article having "*an* intrinsic utilitarian function."  The handles on both parties' toys are necessary for children to grasp and launch them, and are as utilitarian as are handles on countless devices adults use to perform daily activities.  The fact that these toy handles conceal ripcords to launch the toy is no different than a hair dryer handle containing a fan to "launch" hot air or  a garden sprayer with an internal shut-off valve.  These tools and toys, without more, are not artistic.   They are entirely functional, not copyrightable.

## The Majority's Other Cases Are Distinguishable

To support its holding that substantial evidence supports the verdict, the majority states:  "[n]umerous courts have recognized that various types of toys can qualify for copyright protection, in whole or in part, as 'pictorial, graphic or sculptural works' as defined by 17 U.S.C. § 101, even where there is some mechanical or functional element to the toy."  MemDispo6-7.  The cases it cites are distinguishable:

●*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189 (2d Cir. 1985), does not concern toys or toy parts alleged to be purely functional.  Rather, the Second Circuit decided whether toys sold without a copyright notice could be protected:  "Takara's violation of the notice requirement left Hasbro with only an

incipient copyright, subject to cure." 780 F.2d at 194 (footnote omitted). The issue was not whether all or parts of the toy were useful, but rather whether the copyright assignee could have a valid copyright when the toy was first marketed without a copyright notice.

●*Spinmaster, Ltd. v. Overbreak LLC,* 404 F. Supp.2d 1097 (E.D. Ill. 2005), supports the dissent. The defendant argued the Ultralite toy was useful. The court recognized that "if the item is useful, then the mechanical and utilitarian aspects must be separated from the artistic aspects." 404 F.Supp.2d at 1103. The court considered the Ultralite "designed to portray a flying saucer. The flight is only one part of that portrayal." 404 F. Supp.2d at 1104. However, the court also recognized "[i]t is quite clear that the mechanical parts of the Ultralite–the motor and main propeller–are not entitled to copyright protection." *Id.* The court observed that, without the motor and main propeller, the Ultralite's hub, blades and outer ring had no intrinsic usefulness, and held *only these latter* parts copyrightable because they were *separable*. *Id.* Here, the launcher handles are--just like the Ultralite's motor and main propeller--mechanical and utilitarian and therefore *separable.* Copyright does not protect them. Similarly, the 'Drop Copter' is exclusively functional. It portrays no "real life" object; it does not merely convey information; and nothing about it is separable or suggested to be separable. It is unlike anything discussed in *Spinmaster.*

*Spinmaster* is an excellent example of why the Rule 50(b) motion should have been granted as a matter of law. The jury did not do as it was instructed according to 17 U.S.C. § 101: to "separate" the utilitarian aspects of the article from the pictorial, graphic and sculptural aspects of the toys with the launcher handles. The instruction given here follows the dictates of this statute. *See* 3ER533-34para.27. Moreover, the jury was instructed it could only consider the "copyrightable portions of Plaintiff's works" in deciding if there was substantial similarity. 3ER536para.34. Unless what was copied is copyrightable in the first place, the issue of substantial similarity is moot.

●*Masquerade Novelty, Inc. v. Unique Indus., Inc.,* 912 F.2d 663 (3rd Cir. 1990), involved masks looking like elephant, pig, and parrot noses. The "critical issue" was whether these masks were "useful articles." Reversing summary judgment, the Third Circuit held that the masks were not useful articles simply because they produced humor; rather, they were portrayals of real pig, parrot, and elephant noses and "have no utility that does not derive from their appearance….Thus, Masquerade's nose masks are not 'useful articles' for purposes of 17 U.S.C. § 101, and are copyrightable as sculptural works." 912 F.2d at 670-71. The point is that the mask is a medium on which an artist can compose creative expression, such as by forming a crooked smile or furrowed brow, to give a desired expression. Here however, Lanard did not use its toys as a medium for

14

any artistic expression. For example, there is no scrimshaw-type engraving in the handle of the launcher or combat-evoking imagery on the Drop Copter. Nothing in *Masquerade* supports the majority's conclusion that the launcher handles and 'Drop Copter' are not purely functional. The facts in *Masquerade* are analogous to those in *Gay Toys,* which the Third Circuit acknowledges. *Id.* at 671.

●*Ruston v. Vitale,* 218 F.2d 434 (2d Cir. 1955), extended copyright to a doll resembling the chimpanzee in the "Howdy Doody" television program. There was no issue involving "separability" of artistic from utilitarian aspects. The case was decided before the 1976 Copyright Act, so the relevant language was not before the Second Circuit. The decision has no bearing on the finer points of law involved here.

●*Boyds Collection, Ltd. v. Bearing Collection,* 365 F.Supp.2d 612 (M.D. Penn. 2005), held that clothing on toy bears does not serve a utilitarian function, but is for "appearance differentiation." 365 F.Supp.2d at 618. The court observed that human clothing is utilitarian because it protects from the elements and/or embarrassment, while toy bears' clothing does neither. *Id.* at 614. In contrast, handles are generally purely utilitarian, whether they are for children's hands or adult hands.

None of these decisions helps the majority's conclusion that substantial evidence supported the verdict here. In fact, *Spinmaster* illustrates how the jury *should* have determined the issues with the instructions it was given. The jury should have separated the utilitarian aspects of the toys. Because it did not do so, and because those aspects are unquestionably present, no substantial evidence supports the verdict that the copyrights at issue were infringed. The handles here are analogous to the vodka bottle in *Ets-Hoskin v. Skyy Spirits*, where this Court held that no artistic features could be identified separately or could exist independently: "It is essentially a functional bottle without a distinctive shape." 255 F.3d at 1080.

## The Panel Overlooked Material Points of Fact and Law

To prevail on a claim of copyright infringement, the plaintiff must show: (1) ownership of a *valid* copyright, and (2) copying of the original elements of the copyrighted work. *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 361 (1991); *Entertainment Research,* 122 F.3d at 1217. The certificate of registration for a copyright issued within five years of the first publication of a copyrighted work is prima facie evidence of the copyright's validity. 17 U.S.C. § 410(c); *Entertainment Research,* 122 F.3d at 1217. The presumption of validity is subject to rebuttal. *Entertainment Research,* 122 F.3d at 1217. "To rebut the

presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *Id.*

The 'Drop Copter,' 3ER530, was registered "with claim of copyright…under Number VA 1-324-991." 3ER529. The "PROP SHOTS" toy (3ER524), "was deposited in the Copyright Office with claim of copyright registered under number VA 656-310." 3ER523. Attached to Copyright Office's certifications is a photograph of the "PROP SHOTS" toy and packaging and a black and white sketch. All of these toys launch a whirligig into the air.

With respect to the handles, the majority states:

A somewhat closer question is presented as to the validity of Lanard's copyrights in the "Wild Copters" and "Stunt Plane" toys—and in particular, the launcher handle included with these toys. We agree with the district court, however, that the jury's finding that Lanard met its burden of proving the validity of its copyrights in these toys was supported by substantial evidence. First, by introducing into evidence a copyright certificate, Regis. No. VA 656-310, showing that the "Wild Copters" toy was registered by the Copyright Office in 1994, well with five years after first publication of the work, Lanard established the presumptive validity of its copyright in that toy. The presumption was reinforced with testimony from…a senior level designer and later director of product design at Lanard, who testified that he had developed the design for the "Wild Copters" in the early 1990s, and could have designed it in a 'million' other ways so long as the launching mechanism could fit inside. In sustaining the jury's finding on this issue when it denied appellants' post-judgment Rule 50 motion, the district court noted that appellants did not present any expert testimony *or other relevant evidence* to prove that any functional elements of these toys were not subject to copyright

17

protection, *see Poe,* 745 F.2d at 1243, or to overcome the statutory presumption of validity of Lanard's copyrights in the 'Wild Copters' toy.

MemDispo at 9-10 (footnotes and citations omitted)(emphasis added). But the majority failed to consider the evidence Novelty/Exxon presented tending to demonstrate the opposite. *Cf. City Solutions v. Clear Channel Communications, Inc.,* 365 F.3d 835, 841 (9th Cir. 2004)(this Court reverses grant of a Rule 50(b) motion where the district court failed to consider evidence "tending to demonstrate the opposite."). With respect to the launcher handles, Lanard's witness testified:

Q. Does this toy need a launcher to function?

A. Yes, it does.

Q. Does it need a ripcord to function?

A. Yes, it does.

Q. Does the launcher have a handle that functions to allow the launcher to be held by the user?

A. Yes.

4ER763lines9-15; 4ER765lines1-7. Moreover, with respect to the grooves on the launcher handles, which Lanard orally argued were evidence of copying:

Q.  And both handles of both that you have in front of you right now have grooves in them, correct?

A.  Yes.

Q.  Would you agree that those grooves help to improve the ability of the user to grasp the launcher so it doesn't slip out of their hands when it's being used?

A.  The design could be any number different ways, but the—it does help to provide a grip.

4ER787lines4-9.  These admissions, when used in conjunction with the instructions pursuant to 17 U.S.C. § 101, confirm that the launcher handles were utilitarian.  Therefore, the majority is not accurate in saying that "appellants did not present any...*other relevant evidence* to prove that any functional elements of these toys were not subject to copyright protection."  Further, the majority's citation to *Poe,* in light of this evidence, is misplaced.   In *Poe,* there was no evidence comparable to the admissions here.  Thus Novelty/Exxon did, in fact, rebut the presumption that the copyright was valid.

## Conclusion

"One look at [Lanard's launcher handles] reveals that, in each, the element of originality that is necessary to support a valid copyright is totally lacking." *Durham,* 630 F.2d at 908-09.  The Copyright Act and caselaw draw a distinction between art and utility.  The majority's decision eradicates this essential distinction.  This is not a case where substantial damages and attorney's fees totaling $600,851.40, 1ER7-8, should have been awarded for infringement, let alone a jury verdict that there was "wilfull" infringement.

The Rule 50(b) motion should have been granted as a matter of law. Because it was not, Novelty/Exxon asks for panel reconsideration or en banc review.

DATED:  April 27, 2010          Respectfully submitted,



_____

**OVERHAUSER & LINDMAN, LLC**
Paul B. Overhauser
740 West Green Meadows Drive
Suite 300
Greenfield, IN 46140

# CERTIFICATE OF COMPLIANCE PURSUANT TO
# CIRCUIT RULE 40-1(a)

I certify that, pursuant to Circuit Rule 40-1(a), the attached petition for panel rehearing/petition for rehearing en banc is (check applicable option):

 **x**  Proportionately spaced, has a typeface of 14 points or more and contains 4,156 words.

**or**

_____ Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text.

**or**

_____ In compliance with Fed. R. App. 32(c) and does not exceed 15 pages.


DATED: April 27, 2010          Respectfully submitted,


_____

**OVERHAUSER & LINDMAN, LLC**
Paul B. Overhauser
740 West Green Meadows Drive
Suite 300
Greenfield, IN 46140